The next case on for argument is Jose Angel Ortiz Gutierrez versus Pamela Bondi. And is someone going to come? Oh, we have a remote person on this, right? Okay, here we got it. We're ready on the okay. And appearing remotely on this case is, is it Mr. Baker? Yes, that's correct. Can you see and hear us okay? Yes, I can. Okay, are you able to see Mr. Burby? Okay, do you have? Okay, because if. Sure, I can see the chairs. Is he there in person or is he remote? No, he's there in person. Oh. I don't know if he's going to come to the podium. So I think when he comes to the podium, you'll be able to see him. Okay, he must be at the other table. Yeah, I can see everyone. That's fine. Okay, you'll see him when he talks. I don't let people talk from their chairs. So you'll be okay. Okay, so each side has 10 minutes total. And if you want to reserve any time for rebuttal, Mr. Baker, that includes that's within your 10 minutes. So we'll go ahead and start with the petitioner. Okay, thank you. Good morning, this is William Baker on behalf of Jose Ortiz Gutierrez. Yeah, this is a removal case. He applied for asylum withholding in CAT. It was denied. I'm asking your honors today to remand at least the CAT portion of his claim back to immigration court. And I'll explain that to you in a minute. But starting with the asylum withholding, counsel did a good job in briefing and pointing out, I guess, several defects in my case, which I more or less agree with. Number one, at the immigration court level, the particular social group was never really specifically articulated. We didn't really grapple with that. This case is a bit old. I don't remember it, to be honest. I did go back and read the record of proceedings and the briefing and stuff. But for whatever reason, I don't remember. That never came up during the trial, either by me or the immigration judge or the DHS trial attorney. This was back in 2017. Things were a bit more, I guess, informal. There was a specification of a particular social group at the BIA level. But again, I don't necessarily disagree with counsel's argument that there was no real meaningful analysis of any nexus to maybe the lately specified group. Apart from that, back in the immigration court, the judge did deny the asylum for the one-year claim. And again, I don't really have any, again, real beef with that decision. So you're conceding that the asylum claim is forfeited. Is that correct? Yes, Your Honor. We can just, yeah, that's fine. However, you should remand the cat. That's my request today. And I wanna ask you about the withholding claim because it seems to me that there is a clearly articulated argument with respect to the nexus that was not addressed by the BIA because there is information about the fact that this particular Tolucas family contacted and threatened his family. And that seems pretty clearly articulated by your client such that there would still be a reason for remand with respect to the withholding claim. Do you agree with that? Yes, I do. And I did argue that with the BIA. They just kind of rejected the argument. But besides that- Wait a second. Ortiz testified that the Tolucas attacks began because of a water access dispute and ended after the water access dispute was resolved. Am I right about that? Yes, as to his family there in Michoacan, in Mexico. And what I heard you say before Judge Desai's question was that in front of the IJ, there was no really articulated PSG that you basically raised that for the first time in front of the BIA. And so isn't it reasonable to conclude that the Tolucas attacked Ortiz's family because of the water access dispute and not because of any distinct animus towards the Ortiz family? Well, no, they tried to murder the whole family. Remember, Your Honor? Well, I guess what I'm not understanding is what I heard you say before Judge Desai asked you a question. You said that the government raised good points that asylum was barred and that raised good points that on the withholding that you didn't really articulate a PSG at the immigration IJ's level. It was basically brought up for the first time on appeal. So you were saying, I think what I have left is cat. But now then after Judge Desai asked you a question, which I certainly respect your ability to pivot, saying, well, maybe don't you have something on the withholding? You said, well, okay, yeah, maybe I do. Am I reading that wrong? That's correct, Your Honor. My strongest argument here for Your Honors is the cat claim. So counsel, I'm really looking at the record. I'm less interested in sort of the back and forth. And I'm looking at the record because the standard here is substantial evidence whether or not the record supports the claim. And when I look at the record, it seems to me that it compels the finding that there's at least a familial relationship as the central reason that your client was targeted and persecuted by this gang family. So I just wanna understand from you because I think you've stated it both ways. And regardless, I guess, of the fact that you can't make up your mind here in oral argument as to what position you're taking, I'm just going to the record. Yes, the record, I believe, compels the conclusion this family was attacked because of their family relationship. They ambushed my client. They shot his two brothers. He escaped that. They attacked the father with a machete. They went back to the house to finish the job. They didn't get killed there. But then they caught my guy later and beat him and left him for dead. He didn't die, luckily for him. And that's about when he came over here. So he's still terrified of going back there because of the lawlessness. And yeah, I think there is still a viable withholding claim, but I still also agree at the same time that Kat's claim deserves a remand. I think given the events, it's time for a paradigm shift in the analysis of these Mexico asylum cases, especially for Michoacan. The president, for instance, just a couple months ago, he designated six Mexican cartels as terrorist groups. And he's not wrong, but I don't think he went far enough. They're not just terrorist groups. They're warlords is what they are. They control various parts of Mexico, including Michoacan, where my client lives. And the Mexican government allows that. Counsel, I apologize. This is Judge de Alba. I just want to make sure I understand something because there has been a lot of back and forth and you sort of answer a question and then you kind of talk over yourself. So I just want to make sure. Is it your position that your client, Mr. Ortiz, the fact that it's his relationship to his father, that that was the primary reason why he was being attacked? Yes. And as part of a family unit, basically. I'm not sure it's necessarily his father, but the Toluco gang, whoever they are, wanted to exterminate my client's family, maybe for the water, maybe for animus. There's a lot of reasons there, I guess, but they wanted to kill the whole family. If they wanted to just kill the father, they wouldn't have ambushed the three brothers and they wouldn't have attacked my guy alone, too. They tried to kill him while he was by himself and they almost did it. So let me ask you this. For your client, what was the reason that the Tolucos, or what is your position or your client's position that the Tolucos were going after him? Is it because of the water or because of his ties to his family? It's hard to unravel that, both. I think it's the water, the ties to the family, and I think more importantly, they know they can do it because the police aren't going to do anything. I think that's the main thing here. It's just completely lawless there. It's a failed state, and I was going to give the example. It's as if the MS-13 or the mafia or the Hells Angels took over the state of Arizona, and then the United States did nothing to stop that. So where's your client now? Is he a Michoacan? No, he's here still. Okay. He's here in the United States. I mean, this case has taken a while for some reason, but no, he's still here. He's afraid to go back. That's why we're still trying to fight this, Your Honors. But you should remand for the withholding. You should remand for the cat, and could I maybe save a minute left for rebuttal, if necessary, or do you have questions? Sure. Yeah, you can save the balance of your time. Okay. Thank you. All right, we'll hear from the government. Good morning. May it please the Court. Russell Verbee for the Attorney General. It appears that asylum is now off the table, so we're down to withholding. And with withholding of removal, you still have to properly exhaust your claims. And there was never a particular social group of family stated before the immigration judge, and that has been conceded in this Court again. And even though the petitioner discussed his family, when the questioning originally started, it was they didn't like us living in the neighborhood. But as DHS counsel and the immigration judge questioned some more, it came out about the water dispute. And the water dispute became clearly the motivator in this case. Now, family and water, if they were in conjunction together, could perhaps under the withholding standard because of the a reason language versus one central reason language. However, you still have to exhaust the claim properly. And board precedent, which holds sway in the immigration court, requires the petitioner to specifically and clearly designate his particular social group so that the immigration judge can render the proper factual findings that would make up the legal holding that could then go to the board to be reviewed. The board has no authority and had no authority to issue factual rulings with respect to a particular social group. And if we ignore the waiver and the failure to exhaust in this situation, which, while not jurisdictional, is mandatory if the attorney general raises it. I just want to stop you for one second. Yes, please, Your Honor. And take you back to something you just said. And I just want to confirm that you agree that to establish an access that the applicant must show that the protected ground was at least one central reason. If we're in the asylum, but asylum's been waived, we're in withholding. So withholding, it's just a reason. So it can be among several reasons. I'm sorry, I misspoke. So a reason, which means that at this point, so hone in on what your argument is with respect to the withholding issue, that it was not properly exhausted? The particular social group, which is what you have to raise to become a reason. And in this case, he wanted to raise his family. You have to actually raise it before you can get it to the BIA to be ruled on legally after the immigration judge does a factual inquiry into it. In fact, this petitioner, while in the immigration court, in front of the immigration judge, the immigration judge said, I do not see your client as being in a particular social group. Petitioner and counsel said nothing. So there was no social group waive. But if there was, Your Honor, and because the way this developed, I kind of had to come up with an example in my mind, and I apologize for it. It's not, it's kind of a morbid example. But you can have the water dispute be the motivation and the family just be a happenstance and not a reason for the harm in the withholding context. And I'm gonna apologize for the example, but Lee Harvey Oswald shot President Kennedy because he was the president. He just happened to be a member of the Kennedy family. Sirhan Sirhan shot RFK because he was about to become president and was a member of the Kennedy family. So in one instance, you have two A reasons for withholding. And in the other one, you have a reason or the motivator and a happenstance. And I'm sorry for that motivation, that example, but that's the only way to come up with when the way this unfolded. So Ortiz testified that the Tolucos attack began because of a water access dispute and ended after the water access dispute was resolved. So isn't it reasonable to conclude that the Tolucos attacked Ortiz's family because of the water access dispute and not because of any distinct animus towards the Ortiz family? Or on the other hand, you argue that Ortiz failed to exhaust any challenge to the no nexus family, but you're saying because in the BIA brief, Ortiz articulated that he had already suffered past persecution because the Tolucos had vowed to exterminate his family. So isn't that sufficient to exhaust? I don't know, you know, that's where... I'm gonna maintain my exhaustion argument, but I was kind of going into it just in case we get there. But you're right, Your Honor. I think the very good fact, the fact that the water dispute ended and the attacks on the family ended showed it was not the family that's the animus, but on the other side, I'll just remind the court that just saying to the Board of Immigration Appeals, oh, and by the way, I now have a PSG claim being my family, that puts the board in an incredibly difficult position because what are they to do then? They have no ability to enter factual findings. They would have to remand to the immigration judge. So what you'd be encouraging is a petitioner to hold back a PSG claim and throw it out there in the last minute and get that remand. You're putting them in a catch-22. So are there other Ortiz family members that are in Mexico at this point here, whether has anyone else experienced problems with the Tolucos? The only, I'm not 100% sure and I don't want to, but the only thing I've heard is that the problem stopped in around 2002 or four. You'd have to ask Mr. Baker. I think he'd be more up to what the family situation is. I just remember that from the record that it ended about 20 some odd years ago with no further harm. I don't know how many of the family members are still there. Well, so what about the cat? Now he's saying cat. Well, Your Honor, the board saw the cat claim as waived because there was no fulsome attack on the immigration judge's reasoning. It was just a restatement of the claim and a statement about the dreaded future that the petitioner feared in Mexico. And I understand the problems of the cartels. My heart goes out to them, but that's not the standard. The standard in this case, since we're involving the Tolucos family, would be whether, or a cartel of some sort, would be whether a third party is going to commit torture and then would the government of Mexico turn a blind eye to it with the acquiesce. And they reported it to the police. The police did arrest the Tolucos family, although they let them go. We don't know why they let them go, but there was reaction from the police. So that shows some police willingness to help this family. On top of that, just putting out evidence of terrible crimes and horrific abuses in Mexico, as this court's person will show, is insufficient to carry a CAT claim, as are claims that the police are ineffective in their efforts. We don't measure it by the results. We measure whether there's acquiescence. And acquiescence would be telling the Tolucos family or somebody else, go ahead and torture Mr. Ortiz, or knowing it's happening and not doing anything about it on purpose. That's the test. And nothing in this record would compel that finding. So if there are no further questions from the court, the Attorney General will simply ask that this petition for review be denied. Thank you, Your Honor. Thank you. All right, Mr. Baker, we're back to you. And the representative from the government said, since the IJ hearing, have Ortiz's family members in Mexico experienced any further problems with the Tolucos? Up to 2017, when the hearing was held, no. I'm not sure 2017 to 2025. I think the situation in general in Mexico, in Michoacan in particular, has gotten- Has the dispute between your client's family and the Tolucos family been resolved? The water issue has, apparently, because the bad guys won, because the police will not control them. That's his fundamental fear here. He's at the mercy of these people because they can do what they want with impunity. And I agree, again, somewhat with counsel, there was a muddled designation of a particular social group. But the law has changed since then. The law now is you have to, at the trial court level, immigration court level, articulate the group, otherwise it's waived. That wasn't the law, direct law, back in 2017 when we had this case. So I think, on that basis alone, you may want to remand. Let's go back there, let's update things. Things have gotten worse, not better. And especially since the president has designated the Michoacan family, which is obviously Michoacan, the terrorist group, we're sending this man petitioning to his death. That's why he's doing it, your honors. So counsel, let me ask you this. You stated earlier that the Tolucos won the water fight because they get what they want. So is your client then still afraid to return? Yes. Why? He watched his two brothers get shot and almost murdered. He watched himself get almost murdered. His father got hacked up with a machete. So was that due to the water? Or, I mean, now that they have the water, is there still a concern? Yes. Because I think there's grievances, there's like family feuds, oddly enough, and the criminals are in control, not the government. And I think this is terrorism. If it was just a water dispute, okay, not to be flippant, murder the father. Then that'll get your point across. They wanted to murder the whole family, probably because if you murder the father, then they're gonna afraid my client and his brother's gonna murder them. So it's like a self-fulfilling monster. It was a family dispute because I guess they have to exterminate, like you said, the whole family to prevent the family from reprisals. And things are calm. They were at least back in 2017. But again, it's my contention because the bad guys won. They shot the two brothers. They hacked the father with the machete. They tried to murder my guy. They went to jail, and the police just let him go. That's odd. Yeah, we never really got to the bottom of that, but it's my client's belief that the police are corrupt and they work with the terrorists, the cartels. He didn't specifically put these two local people in the Michoacan family. He did, I think, use the word gangs. Okay, you've gone over. Let me find out if my colleagues have any additional questions. We do not, so I'm gonna bring this to a close then. We gave you a couple extra minutes, so. Okay, thank you. Thank you, Mr. Baker. Thank you. Thank you, counsel for the government, Mr. Verby, and this matter will stand submitted.
judges: CALLAHAN, DESAI, ALBA